**IN THE UNITED STATES
DISTRICT COURT FOR THE
NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| WALTER SALIK | ) | |
| | ) | |
|         **Plaintiff,** | ) | **No. 23 C 16716** |
| | ) | |
| v. | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
|   Commissioner of Social Security, | ) | |
| | ) | |
|         **Defendant.** | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, a little over three years ago in June 2021. (Administrative Record (R.) 185-186). He claimed that he had been disabled since November 5, 2020 (R. 185, 207) due to "Exocrine pancreatic insufficiency; Bladder cancer, upcoming surgery 6/14/21, unknown stage; irritable bowel syndrome; Epilepsy-like brain waves, no current diagnosis; Headaches; Vasovagal syncope; Fatigue, weakness; Bowel cramping, bowel frequency, urgent need to defecate; Indigestion, nausea, bloating, gaseous; Plantar fasciitis." (R. 207). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's decision that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on December 13, 2023, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on January 17, 2024.  Plaintiff

asks the court to reverse and remand the Commissioner's decision, while the Commissioner

seeks an order affirming the decision.

## I.

After an administrative hearing at which plaintiff, represented by counsel, testified, along

with a vocational expert, the ALJ determined the plaintiff had the following severe impairments:

irritable bowel syndrome/pancreatic insufficiency, bilateral sensorineural hearing loss with

tinnitus, bilateral wrist soft tissue injuries, and tension headaches. (R. 23). The ALJ also noted

that the plaintiff had a history of bladder cancer, left hemisphere brain dysfunction, disc space

narrowing, a history of cardiomyopathy, and plantar fasciitis, but found that these impairments

were not severe as they did not result in any significant limitation in performing basic work

activities. (R. 23-24). The ALJ determined that the plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1, focusing on Listings 1.18, 1.21, 2.10,

5.06, and 11.02. (R. 24).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC")

to capacity to perform light work with the following exceptions:

> he can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. He can
> occasionally stoop, crouch, kneel and crawl. The claimant has to avoid
> concentrated exposure to extreme heat, excessive noise of more than moderate
> intensity as defined in the Dictionary of Occupational Titles (DOT), excessive
> vibration, and unprotected heights and uneven terrain. He should avoid
> concentrated use of hazardous machinery. (R. 25).

The ALJ went on to summarize the plaintiff's allegations regarding limitations stemming

from his impairments. He noted that the plaintiff said he had cramping and had to use the

bathroom between five to ten times a day since about 2017. The plaintiff also said he got bad

headaches that caused dizziness, as well as ringing in his ears that prevented him from concentrating during the day and woke him at night. He had weakness and "surges" that made him tired and knocked him out. He gets flare ups of pain in his wrist and has to wear a wrist brace for about two or three weeks. (R. 25-26). The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 26).

The ALJ then reviewed the medical evidence. The ALJ noted that plaintiff fell in 2021, and that an MRI showed tears in the fibrocartilage of the right wrist. He had an injection in February of 2021 and began to complain of pain in his left wrist a month later. At an exam in March 2021, plaintiff had full motion of the shoulders, elbows, forearms, wrists, and fingers. There was no tenderness upon supination or pronation of the forearm. Strength was normal. The doctor gave plaintiff a brace to wear, prescribed Arthrotec, and indicated he would improve with time. In April 2021, exam was normal, although plaintiff reported occasional ulnar-sided wrist pain, mostly on the right. The doctor said he should wean out of the brace and noted he was "doing full duty." (R.26). In May 2021, the plaintiff reported intermittent pain with what he called odd motions of his wrist. Imaging showed the pisiform triquetral and carpal tunnel view showed some very subtle, early, asymmetrical joint space narrowing consistent with some early arthritis without fracture. The doctor told plaintiff he could take some anti-inflammatories if he was having more constant discomfort along with a wrist support.

In December 2021, plaintiff said he was doing great, but then a couple weeks prior his pain increased with some slight increased use. Exam showed some tenderness over the six

dorsal compartments, and some tenderness over the pisiform triquetral area and minimal swelling. Otherwise, he was neurovascularly intact. The doctor told plaintiff to continue with aspirin, a brace, heating pad, and alternate with ice. (R.27). At a consultative exam in March 2022, plaintiff's grip strength was 5/5 in both hands, dexterity was normal in both hands, and grasping and manipulation was normal in both hands. Plaintiff was able to fully extend the hands, make fists, and oppose fingers; range of motion of both wrists was normal. (R. 27).

The ALJ then addressed plaintiff's irritable bowel syndrome/pancreatic insufficiency. In March 2021, plaintiff complained of bloating and abdominal cramps, but the doctor noted that all of his endoscopic tests were normal and that labs were normal except for a low fecal elastase. He was told to follow a high fiber diet and take lipase. He was referred for a CT of the abdomen/pelvis which showed moderate retained matter; no free fluid, free air, or bowel obstruction; normal appendix; and a thickening of the urinary bladder wall which could have been related to a chronic bladder obstruction secondary to an enlarged prostate. At his next exam, he was noted to have mild exocrine pancreatic insufficiency, and was prescribed enzymes for 3 months. The doctor thought there may be an element of anxiety to his symptoms.

In June 2021, the doctor said he believed the plaintiff's symptoms were due to irritable bowel syndrome, and he was prescribed dicylomine. In September 2021, the claimant reported he continued to have abdominal cramps and changing stool caliber, had had little improvement with pancreatic enzymes or dicylomine. But an extensive exam was negative aside from abnormal stool elastase. Abdomen was soft, non-tender, and non-distended; bowel sounds were normoactive, and there was no guarding, rebound, or masses. At his next follow up in January 2022, exam of the abdomen again showed it was soft, non-tender, non-distended, with normoactive bowel sounds, and no guarding, rebound, or masses. The doctor told him to

continue with creon and a high fiber diet.  Plaintiff refused treatment with amitriptyline.  (R. 27).

The ALJ then moved on to review the evidence concerning plaintiff's hearing loss and tinnitus.  In July 2021, the plaintiff went to an ear, nose, and throat doctor. There was no ear pathology on physical exam regarding his tinnitus. He was told to use ear protection if he were around loud noises. An audiogram showed symmetric bilateral high-frequency sensorineural hearing loss.  In November 2021, plaintiff reported his ear had been popping and he continued to complain of tinnitus in his right ear which fluctuated in severity, but his hearing was mostly intact. There was no visible otologic pathology, and he was advised on noise protection, dietary modifications, masking techniques, medical therapy, a tinnitus masker, and tinnitus retraining therapy. (R. 28).

The ALJ then noted that plaintiff alleged that he got headaches between 2-4 times a week and could last for hours, days, or weeks. He took aspirin or Tylenol for his headaches, which sometimes worked and sometimes did not. However, no evidence indicates that he has sought a more intensive treatment regimen.  At his consultative examination in March 2022, the plaintiff reported that he had headaches that varied in frequency. They could occur a couple of times each week.  A CT of plaintiff's neck in July of 2022 was normal.  An MRI of the brain at that time showed no acute or suspicious intracranial abnormality. (R. 28).

The ALJ next noted the plaintiff's activities.  He was able to drive, even had a seasonal job as a delivery driver from November 2021 through early January 2022. He used his own vehicle to deliver small packages or envelopes without a partner and that he worked six to eight hour shifts, five days a week.  He did all of the cooking, cleaning, and laundry for himself.  (R. 29).  The ALJ said that the medical records indicated that plaintiff's symptoms and complaints were not supported by objective findings consistent with a finding of disability.  Without such

objective findings, the Plaintiff's testimony and prior allegations were not enough to support a finding of disabled. (R. 29).

The ALJ then considered the medical opinions, noting that there was no medical opinion in the record file indicating that the plaintiff was unable to work or providing limitations that would indicate as much. The ALJ noted that state agency medical consultant at the initial level opined that the plaintiff was capable of light work except he could occasionally climb; frequently balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme hot and hazards. (R. 29). At the reconsideration level, the reviewing consultant found that plaintiff was capable of light work except that he could occasionally climb, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme hot, noise, vibration, and hazards. The ALJ explained that the reconsideration assessment was slightly more restrictive than the initial assessment. He found that both were generally consistent with each other and generally persuasive, but that the reconsideration assessment was more persuasive as it accounted for impairments such as hearing/tinnitus and headaches, which the initial assessment consultant did not. (R. 30).

The ALJ went on to conclude that the plaintiff could still perform his past relevant work as a home attendant (DOT #354.377-014) based on the plaintiff's written description of his duties. The ALJ also relied on the testimony of the vocational expert to find that there were other jobs that existed in significant numbers in the national economy that plaintiff could perform, including a salesperson (DOT 279.357-050; approximately 161,000 jobs). (R. 31). Accordingly, the ALJ found the plaintiff not disabled and not entitled to benefits under the Act. (R. 31-32).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The substantial evidence standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build a "logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). While this requirement has been described as "lax", *Crowell*, 72 F.4th at 816; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), the Seventh Circuit has also explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."). *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may

affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. Indeed, the Seventh Circuit's opinion in *Jarnutowski*, 48 F.4th 769, exemplifies this subjectivity. Two judges on that panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did, as did the Magistrate Judge who had reviewed the ALJ's decision (by consent) at the district court level. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court explained that the ALJ had to:

> explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

766 F.2d at 287.   More recently, the Seventh Circuit has again emphasized that all ALJs really need to do is "minimally articulate" their reasoning.  *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).  The court has explained "that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053; *see also Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. May 31, 2024)(". . .  ALJs are 'subject to only the most minimal of articulation requirements"—an obligation that extends no further than grounding a decision in substantial evidence.").  So, as ever, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).  The ALJ has done more than enough here.

## III.

The plaintiff makes two arguments in support of the contention that the ALJ's decision must be remanded.  First, the plaintiff contends that the ALJ failed to account for plaintiff's limitations in sustaining concentration, persistence, or pace ("CPP") imposed by his headaches and irritable bowel syndrome (IBS).  Second, the plaintiff complains that the ALJ failed to adequately consider his alleged dizziness as a symptom of his headaches.  Any other arguments the plaintiff might have raised are, of course, deemed waived. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

## A.

The plaintiff first complains that, although the ALJ found both his headaches and IBS to be severe impairments, he did not find that they had any effect on plaintiff's ability to maintain concentration, persistence, or pace.  The plaintiff points out that he described "the symptoms of

the condition in his testimony and in a written statement, noting that he has periods of days or weeks that he has a difficult time functioning due to headaches." [Dkt. #10-2, at 8, citing R. 263], and that his IBS resulted in a need for frequent restroom breaks and would have an impact on his ability to sustain CPP. [Dkt. #10-2, at 9, citing (R. 47-48)].

As the plaintiff says, a severe impairment is defined as one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023). That's not much; indeed, the Seventh Circuit maintains that the determination of whether one has a severe impairment is "a de minimis screening for groundless claims." *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016); *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. Aug. 9, 2016). So, one should perhaps not build too much on the foundation that an impairment was found to be severe.

In any event, it's certainly not the case that the ALJ simply dismissed these two ailments. He discussed the evidence relating to the plaintiff's headaches:

> . . . the claimant has headaches. He has complained of them to his primary care in the past (Ex. 11F). He reported a history of headaches for over 10 years associated with dizziness. (Curiously, he told me he did not know a reason he was having episodes of dizziness.) At his consultative examination for DDS in March 2022, the claimant reported that his headaches varied in frequency. His headaches could occur a couple of times each week. He was taking his medication as prescribed (Ex. 10F/2). Due to his headaches, he had a CT of the neck in July of 2022 which was a normal CT angiography of the neck (Ex. 13F/6). A MRI of the brain at that time showed no acute or suspicious intracranial abnormality (Ex. 13F/4). . . . At the hearing, the claimant testified that he gets headaches between 2-4 times a week and can last for hours, days, or weeks. He takes aspirin or Tylenol for his headaches. He said he thinks sometimes the medicine works and sometimes it does not. However, no evidence indicates that he has sought a more intensive treatment regimen, such as that provided by a specialty clinic, to address the headaches. (R. 28).

Frankly, there's not much medical evidence about the plaintiff's headaches and more importantly there's no medical evidence about any restrictions that might come from them. It's

11

up to the plaintiff to not only establish the existence of headaches but also the specific limitations from them that affect his capacity to work. *Streikus v. O'Malley*, No. 22-2484, 2024 WL 983568, at \*3 (7th Cir. Mar. 7, 2024); *see also Gedatus*, 994 F.3d at 905 ("[Plaintiff] bears the burden to prove she is disabled by producing medical evidence. . . .Yet she failed to show how her medically determinable impairments caused any limitations beyond those the ALJ found."); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)(plaintiff cited no medical evidence that his impairment kept him from performing the work the ALJ found him capable of). All the plaintiff points to are allegations as to the intensity and frequency of his headaches, and allegations are insufficient. *Karr*, 989 F.3d at 513 (plaintiff must "identify[ ] ... objective evidence in the record" that she is disabled). "... [S]ubjective complaints are the opposite of objective medical evidence ...." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Zoch*, 981 F.3d at 601 ("A claimant's assertions of pain, taken alone, are not conclusive of a disability."); 42 U.S.C. § 423(d)(5)(A)("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ....").

The same goes for plaintiff's IBS. The ALJ, discussed the medical evidence relating to this impairment thoroughly and, again, there wasn't much there to indicate an inability to work:

> In February 2021, he had a colonoscopy which showed a normal colon. In March 2021, the claimant followed up at GI Partners where he complained of significant bloating and passage of flatus as well as crampy abdominal cramps. The doctor noted that all of his endoscopic tests were normal. His labs were normal except for a low fecal elastase. The claimant reported he had lost about 10-15 pounds in the last few months (Ex. 7F/26). He was to follow a high fiber diet, take lipase, and get CT of the abdomen/pelvis (Ex. 7F/27). The CT showed moderate retained matter; no free fluid, free air, or bowel obstruction visualized; a normal appendix; and a thickening of the urinary bladder wall which could be related to a chronic bladder obstruction secondary to an enlarged prostate (Ex. 7F/30). At his next follow up he was found to have mild exocrine pancreatic insufficiency. He was to take enzymes for 3 months and then follow up. The doctor thought there may be an element of anxiety to his symptoms (Ex. 7F/32). In June 2021, the doctor said

he believed the claimant's symptoms were due to irritable bowel syndrome and he was prescribed dicylomine (Ex. 7F/36). In September 2021, the claimant reported he continued to have abdominal cramps and changing of stool caliber. He had little improvement with pancreatic enzymes or dicylomine. He had not had any weight loss or hematochezia. His extensive evaluation had been negative except for an abnormal stool elastase (Ex. 7F/37). His abdomen was soft, non-tender, and non-distended. It had normoactive bowel sounds and no guarding, rebound, or masses. He was to continue his medication and a high fiber diet (Ex. 7F/39). At his next follow up in January 2022, exam of the claimant's abdomen again showed it was soft, non-tender, non-distended, with normoactive bowel sounds, and no guarding, rebound, or masses (Ex. 20F/10). He was to continue his current therapy with creon and a high fiber diet. It was noted that they again discussed treatment with amitriptyline and the claimant still refused. (R. 28).

As the ALJ explained, the plaintiff was treated conservatively, and there were "no significant findings or treatment related to his IBS/pancreatic insufficiency." (R. 29). IBS is a diagnosis, but a diagnosis is not a disability. *See, e.g., McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("[Plaintiff] refers generally to time off-task and the need for frequent unpredictable breaks, but he does not quantify these limitations or show why they are work-preclusive. Medical evidence supports the existence of the condition, but the need for restrictions cannot be inferred from the diagnosis alone."); *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005)(while the plaintiff may have IBS, "the ALJ was correct in noting that there is no objective support in the medical records for [plaintiff's] contention" as to disabling symptoms from it). So, the question – as with plaintiff's headaches – is what restrictions can one draw from such evidence? It's a question the plaintiff leaves unanswered.

The real problem here is that the plaintiff's brief, beyond relying primarily on allegations, fails to grapple with the medical evidence that goes against the plaintiff's claims. *See Morales*, 103 F.4th at 471 ("To warrant reversal, [plaintiff] must show that the ALJ's determination was not supported by substantial evidence. . . . And there is no way to satisfy that burden without grappling with the evidence . . . ."). For example, the plaintiff cites to a report from Dr.

13

Horowitz regarding his IBS but ignores the fact that it undermines plaintiff's claims of frequent

bathroom breaks that would prevent him from working. [Dkt. #10-2, at 3].  On January 18, 2021,

plaintiff told Dr. Horowitz he needed just two bathroom breaks daily.  (R. 506).  Indeed, plaintiff

was consistent about not requiring frequent trips to the bathroom during the course of his

treatment with Dr. Horowitz:

> March 9, 2021 – Denied change in bowel habits, constipation, diarrhea, frequent urination (R. 512).

> March 25, 2021 – Denied change in bowel habits, constipation, diarrhea, frequent urination (R. 517).

> June 23, 2021 – Denied change in bowel habits, diarrhea, frequent urination (R. 520).

> September 22, 2021– Denied change in bowel habits, constipation, diarrhea, frequent urination (R. 523).

There seems to be a gulf between what the plaintiff tells his doctor and what he tells the Social

Security Administration.  It's likely why, in citing to the record, the plaintiff's brief skips items

like the foregoing.  But, again, they can't be ignored.  *Morales*, 2024 WL 2794055, at *1;

The disconnect is perhaps not quite as stark regarding plaintiff's complaints about his

headaches, but one can see why plaintiff's reports to his doctor were ignored in plaintiff's brief:

> March 23, 2018– Patient states that his headaches significantly subsided during the weekdays but not the weekends. He infrequently experiences headaches on weekends described as global, moderate intensity . . . .(R. 569)  He agreed that his headaches as well as other transient neurological symptoms were significantly improved since he has been on lamotrigine. (R. 571).

> September 25, 2018– He states his headaches are relatively well controlled. (R. 563)

> March 28, 2019– he states he has not been experiencing any severe headaches (R. 550), Denied headaches (R. 552).

> September 12, 2019– complains about some intermittent headaches. He states that

when he takes health tablet of lamotrigine in addition to his regular dose his headaches significantly subsided. Currently he is taking lamotrigine 25 mg nightly a half to 3 tablets twice a day (R. 544).

September 12, 2022– Negative for light-headedness and headaches (R. 666, 670).

Reports such as these are a far cry from claims of uncontrollable headaches lasting for days or weeks.

**B.**

The plaintiff also takes issue with the ALJ's finding that plaintiff's "dizziness" is a non-medically determinable impairment" rather than a symptom of plaintiff's headache disorder. As just discussed, the evidence regarding plaintiff's headache disorder does not support the extent of his allegations. And, as discussed before, it is incumbent upon the plaintiff to present medical evidence to establish the limiting effects of an alleged impairment. Here, again, the plaintiff cites to absolutely no evidence regarding limiting effects of his alleged dizziness in his brief.

The plaintiff does say that he mentioned dizziness to the doctor who performed his consultative exam in March 2022, and that he complained of light-headedness in July 2022. [Dkt. #10-2, at 4]. And he does cite abnormal EEG studies in June 2016 (R. 749) and July 2022 (R. 578). But what was the ALJ – and now, the court – to make of them in terms of work limitations? *See Jozefyk*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address [plaintiff's dizziness] . . . because he hypothesizes none."). His doctor reported that treatment with lamotrigine improved the plaintiff's symptoms in general in July 2022. (R. 867). Prior to that in March 2018, his doctor said he discussed plaintiff's symptoms and his EEGs with the plaintiff, who "agreed that his headaches as well as other transient neurological symptoms

15

were significantly improved since he has been on lamotrigine. . . [and] agreed that his symptoms were improved as well and [he would] continue take lamotrigine . . . ." (R. 571).

As a last-ditch effort, the plaintiff argues that the ALJ had a duty to investigate any conflict between what the plaintiff said at the hearing about his symptoms and what he told his doctors. But, long-established Seventh Circuit precedent holds that discrepancies between a plaintiff's allegations and the medical record can be taken as evidence of symptom exaggeration. *Elder v. Berryhill*, 774 F. App'x 980, 983 (7th Cir. 2019); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). The plaintiff has been represented by counsel four days after he filed his application for benefits. (R. 102-10, 185-86). As such, he is presumed to have made his best case for benefits here and before the ALJ. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). While it may be true, as the plaintiff asserts, that disability hearings are non-adversarial in nature, that does not mean that ALJs must pitch-in and assist plaintiffs, who are represented by counsel in getting their stories aligned with the objective evidence.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #11] is granted and the plaintiff's motion for judgment on the pleadings [Dkt. #10] is denied.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/20/24

16